**BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:** CHIQUITA BRANDS INTERNATIONAL, INC. ALIEN TORT STATUTE AND SHAREHOLDER DERIVATIVE LITIGATION | MDL Docket No. 1916 |

This Filing Relates To The Following Case Only:

*John Doe 1 et al. v. Carla A. Hills, as Personal Representative for the Estate of Roderick M. Hills*, D.D.C., 1:15-cv-1586 (JDB)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-7)**

Dated: October 29, 2015

            O'MELVENY & MYERS LLP

           By: /s/ K. Lee Blalack, II
             K. Lee Blalack, II
             lblalack@omm.com
             Anton Metlitsky
             ametlitsky@omm.com
             Dimitri D. Portnoi
             dportnoi@omm.com
             O'Melveny & Myers LLP
             1625 Eye Street NW
             Washington, DC 20006
             (202) 383-5300
             (202) 383-5414 (fax)

           *Attorneys for Defendant Carla A. Hills, as Personal Representative of the Estate of Roderick M. Hills, Sr.*

Pursuant to Rule 7.1(f) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation ("JPML"), Carla A. Hills, as personal representative of the Estate of Roderick M. Hills ("the Estate"), files this Memorandum of Law in Support of its Motion to Vacate Conditional Transfer Order (CTO-7).

## **INTRODUCTION**

One month ago, plaintiffs initiated the above-captioned action in the U.S. District Court for the District of Columbia.  *See* 1:15-cv-01568, Dkt. No. 1 (D.D.C. Sept. 29, 2015) (the "Probate Complaint").  By its express terms, plaintiffs filed the Probate Complaint for the purpose of complying with the Probate Code of the District of Columbia.  On October 7, the Panel issued CTO-7, conditionally transferring the Probate Action to the above-captioned MDL proceeding.

Plaintiffs had earlier filed another complaint, in the U.S. District Court for the District of New Jersey, which the Panel transferred to the Hon. Kenneth A. Marra of the U.S. District Court for the Southern District of Florida (the "MDL Court").  The original defendant in that action was Chiquita Brands International, Inc., but plaintiffs later added several individual defendants, including Roderick M. Hills, Sr.  On October 29, 2014, Mr. Hills died, and the MDL Court permitted Plaintiffs to substitute the Estate as a defendant.

Following Mr. Hills' death, the Estate gave plaintiffs clear notice that they must file a verified claim with the Estate and the Probate Division of the Superior Court of the District of Columbia by June 1, 2015 in order to preserve the right to recover any judgment against the Estate.  The notice made clear that, under the D.C. Probate Code, a "[c]laim against the decedent shall be presented to [the personal representative] with copy to the Register of Wills or filed with the Register of Wills with a copy to the [personal

1

representative], on or before 6/1/2015, or be forever barred." MDL Dkt. No. 912-3. Plaintiffs missed that deadline by over six weeks and their claim was disallowed by the Estate as, *inter alia*, untimely. The D.C. Probate Code provides a remedy to claimants who wish to dispute a disallowance of claim—the filing of a verified complaint to challenge the disallowance. *See* D.C. Code § 20-908(a). The Probate Complaint is explicitly phrased as an attempt to invoke this code provision. Probate Compl. ¶ 14 n.3 ("The D.C. Probate Code requires that following a disallowance, a claim be filed in the D.C. Superior Court o[r] another court of competent jurisdiction. Although Plaintiffs believe that their existing complaint against Chiquita and others fulfills this requirement, out of an abundance of caution, Plaintiffs submit this Complaint, which has been modified to name only Carla Hills as the Defendant.").

      The only question validly presented by the Probate Complaint is whether it successfully preserves plaintiffs' claims against the Estate as a matter of D.C. law. The litigation of this question requires no factual development and can be resolved swiftly in the District of Columbia. The Estate will take the position, for example, that the Probate Complaint should be dismissed because the D.C. Probate Code explicitly requires that a verified complaint be filed in the Probate Division of the D.C. Superior Court, or the claim is "forever barred." *See* D.C. Code § 20-908(a) ("If the claim is disallowed in whole or in part, the claim is forever barred to the extent of the disallowance unless the claimant files a verified complaint in the Court, not later than 60 days after the mailing of the notice disallowing the claim."); *id.* § 20-101(a) (defining "Court" as "the Probate Division of the Superior Court of the District of Columbia"). Furthermore, the Estate will argue that federal courts lack jurisdiction to command the D.C. Superior Court to

vacate the disallowance of claim under the *Rooker-Feldman* doctrine and the probate exception. Plaintiffs will likely argue that under D.C. law it can enter *any* court and seek an order enjoining the D.C. Superior Court and, furthermore, will state some substantive basis for why the disallowance of claim should be overturned.

None of these arguments share any common issue of fact with the questions being litigated in the MDL Court. The MDL Court is deciding now whether plaintiffs have stated a claim for violations of the Torture Victim Protection Act ("TVPA"), 18 U.S.C. § 1350 note and Colombian tort law. The MDL Court is also deciding whether to dismiss all the actions under the doctrine of *forum non conveniens*. The MDL Court recently permitted the taking of depositions of former Colombian paramilitaries in a Colombian prison. MDL Dkt. No. 759.[1] None of those legal questions and factual disputes have anything at all to do with the resolution of the relatively simple issues of D.C. probate law and jurisdiction to be litigated as to the Probate Complaint.

There is also no other basis to transfer this action. Maintaining this action in the District of Columbia, where plaintiffs *chose* to file it, is supported by the convenience of the parties. Although plaintiffs are Colombian citizens unlikely to testify in person in either action, Ms. Hills and the Estate are domiciled in the District of Columbia. All facts concerning the validity of the Probate Complaint are facts established by reference to filings and procedure in the Probate Division of the D.C. Superior Court. And counsel for plaintiffs, as well as litigation and probate counsel for the Estate, are located in the District of Columbia.

---

[1] For purposes of this motion, the Estate refers to docket entries on the docket in the MDL Court by the designation "MDL Dkt. No.," and to docket entries before this Panel as "ECF No."

There is also no justice or efficiency in the transfer of this action to the MDL Court. None of the traditional factors this Panel considers—duplicative discovery, inconsistent rulings, or conflicting class actions and pretrial conferences—are implicated here. Moreover, the Probate Complaint may be subject to quick dismissal in the District of Columbia, whereas, if transferred to the MDL Court, it is likely to become mired in a complex and difficult multidistrict litigation that has nothing to do with probate law. The D.C. Probate Code sets forth a strict statute of limitations in order to provide probated estates peace; a swift dismissal in the District of Columbia will provide that peace. Transfer to the MDL Court will frustrate it.

## BACKGROUND

On February 20, 2008, the Panel ordered that six actions pending in five judicial districts be consolidated for pretrial proceedings before the Honorable Kenneth A. Marra of the U.S. District Court for the Southern District of Florida. *In re: Chiquita Brands Int'l, Inc. Alien Tort Statute and Shareholders Derivative Litig.*, 536 F. Supp. 2d 1371 (J.P.M.L. 2008). Decedent Roderick M. Hills, who had served as a Chiquita board member from 2002 to 2007, was named as a defendant in three shareholder derivative actions and joined in the motion to this Panel seeking to consolidate the actions. *See* ECF No. 8. The Panel subsequently transferred multiple other shareholder derivative, Alien Tort Statute, and Antiterrorism Act actions to that Court. *See, e.g.*, ECF Nos. 26, 28, 35, 41, 46, 58. On September 11, 2008, all plaintiffs in the shareholder derivative actions filed a consolidated complaint that named the entire Board of Directors for Chiquita Brands International, Inc. as defendant, including Mr. Hills. On October 15, 2010, however, the MDL Court entered a final judgment and order of dismissal on the

consolidated shareholder derivative actions and Mr. Hills ceased to be a party to the multidistrict litigation.

In addition to the shareholder derivative complaints, this Panel has also transferred to the MDL Court actions arising under the ATS, the TVPA, Colombian law, state common law, and a separate set of complaints alleging violation of the Anti-Terrorism Act, 18 U.S.C. §§ 2332 *et seq*. ("ATA").  Initially, none of these actions named Mr. Hills as a defendant.

On November 4, 2011, Chiquita Brands International, Inc. and Chiquita Fresh North America LLC (collectively, "Chiquita"), then the only defendants in any ATS action, filed a motion to dismiss all of the ATS complaints based on the doctrine of *forum non conveniens*.  MDL Dkt. No. 502.  On March 27, 2012, with that motion still pending, Judge Marra certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) certain legal questions unrelated to the motion to dismiss.  MDL Dkt. No. 518.  In late 2012, plaintiffs in each of the ATS actions filed amended complaints naming former directors and officers of Chiquita as individual defendants.  As a result, the MDL Court later denied as moot without prejudice the motion to dismiss for *forum non conveniens*.  MDL Dkt. No. 635.  Two of the amended complaints named Mr. Hills as a defendant.  *See* MDL Dkt. Nos. 575 (the "D.C. Complaint");[2] 589 (the "New Jersey Complaint").  While plaintiffs were filing amended complaints, the United States Court of Appeals for the Eleventh Circuit granted the motion for interlocutory review.  MDL Dkt. No. 579.

---

[2] As used in this Motion to Vacate, the "D.C. Complaint" refers to the Complaint initially filed in the U.S. District Court for the District of Columbia and transferred to the MDL Court as part of the initial Panel order creating the MDL.  And the Probate Complaint refers to the instant complaint, filed in the District of Columbia by the plaintiffs who initially filed the New Jersey Complaint.

Thereafter, Judge Marra stayed the ATS actions during the pendency of the interlocutory appeal and tolled the deadline for the newly-added individual defendants to file responsive pleadings until after the conclusion of the appeal.  MDL Dkt. No. 587.  Because of that stay, Mr. Hills never filed any paper in either action, in either the District Court or the Eleventh Circuit.

On October 29, 2014, Mr. Hills passed away.  On March 3, 2015, the Estate sent to plaintiffs' counsel in the two actions in which Mr. Hills had been a party a notice to known creditors pursuant to the Probate Code of the District of Columbia.  That notice instructed counsel to serve a verified claim on the Estate and on the Register of Wills of the District of Columbia no later than June 1, 2015, the deadline for presenting a claim under the D.C. Probate Code.  Also on March 3, the Estate filed a suggestion of death in the MDL Court under Federal Rule of Civil Procedure 25.  That Rule requires a plaintiff to file a motion to substitute the estate as a party within 90 days of the suggestion of death (*i.e.*, June 1), and to serve the motion, together with a notice of hearing, on non-parties as provided in Rule 4.  Plaintiffs in both actions filed a Rule 25 motion for substitution on June 1, 2015.  MDL Dkt. No. 813.  On July 10, the MDL Court granted the motion for substitution before the Estate's response to the motion was due.  *See* MDL Dkt. No. 834; *see also* Dkt. No. 9:08-cv-80421, ECF No. 230 (S.D. Fla.) (setting forth due date for response to motion for substitution as fourteen days following filing of notice of hearing); Fed. R. Civ. P 6(d).  The Estate has since filed a motion to dismiss both actions, which motion is not yet fully briefed.  MDL Dkt. Nos. 911-12.

Most pertinent to this motion to vacate, however, are the instant plaintiffs' efforts to comply with the probate law of the District of Columbia.  No plaintiff presented a

verified claim to the Estate or filed one in the Register of Wills before the June 1 deadline. As a consequence, any such claim was "forever barred." MDL Dkt. No. 912-3. After an untimely verified claim was presented and filed by plaintiffs in the New Jersey action on July 21, it was disallowed on, *inter alia*, timeliness grounds. MDL Dkt. Nos. 912, 912-8, 912-9.[3] The Estate's filing with the Probate Division disallowing the claim, which was served on plaintiffs' counsel, informed plaintiffs that they must "file a verified complaint with the Probate Division of this Court [the D.C. Superior Court] within sixty days." MDL Dkt. Nos. 912, 912-9; *see also* D.C. Code § 20.908(a); D.C. Super. Ct. R. Probate Div. 407(a). The purpose of a verified complaint is to challenge the Estate's disallowance of claim. In the event of such a complaint, the Probate Division of the D.C. Superior Court decides whether to vacate the disallowance of claim—filed in that Court—based on the procedural propriety of the original verified claim.

Instead of filing a verified complaint with the Probate Division of the D.C. Superior Court, plaintiffs waited until the sixtieth day after the disallowance of their claim and filed the Probate Complaint in *federal* court. In large substance, the Probate Complaint mimics the New Jersey Complaint, naming only the Estate as a defendant. But the Probate Complaint itself makes clear that it is asserted only "[t]o ensure that any future judgment against Mrs. Hills/the Decedent would be enforceable against the Decendent's [*sic*] estate." Probate Compl. ¶ 14 n.3. Plaintiffs assert that "[t]he D.C. Probate Code requires that following a disallowance, a claim be filed in the D.C. Superior Court o[r] *another court of competent jurisdiction*." *Id.* (emphasis added).

---

[3] Plaintiffs in the D.C. action—the action initiated in the District of Columbia and transferred to the MDL Court in 2008—have not filed a verified claim against the Estate or initiated any other proceedings in connection with the probate estate.

7

Plaintiffs reading of the D.C. Probate Code is clearly wrong. They do not have the option of filing in *any* court. Rather, the D.C. Probate Code specifically requires that an action be filed in the Probate Division of the D.C. Superior Court. D.C. Code § 20-908(a) ("If the claim is disallowed in whole or in part, the claim is forever barred to the extent of the disallowance unless the claimant files a verified complaint in the Court, not later than 60 days after the mailing of the notice disallowing the claim."); *id.* § 20-101(a) (defining "Court" as "the Probate Division of the Superior Court of the District of Columbia"). The Probate Rules also so require. D.C. Super. Ct. R. Probate Div. 407(a) ("An … action for payment of a claim in accordance with D.C. Code § 20-908 … may be commenced by any party in interest only by filing a verified complaint with the Register of Wills"); D.C. Code § 11-2101 ("Register of Wills" is "an office in the Probate Division of the Superior Court"). And the notice of disallowance of claim served on plaintiffs—which used a D.C. Superior Court form—notified plaintiffs to file in Superior Court. MDL Dkt. Nos. 912-9; D.C. Superior Court Form, Notice of Action Taken on Claim, *available at* http://www.dccourts.gov/internet/documents/NoticeofActionTakenonClaim1(nrt).pdf.[4]

---

[4] Plaintiffs' attempt to secure federal jurisdiction to review the Probate Division's actions is also plainly improper under the *Rooker-Feldman* doctrine. *See Chen v. Raz*, 172 F.3d 918 (D.C. Cir. 1999) (per curiam) (table) (applying *Rooker-Feldman* doctrine to bar review of Superior Court decisions in probate proceedings). The Probate Complaint is riddled with other jurisdictional and prudential defects, including the fact that claims premised on diversity jurisdiction would also be barred by the probate exception, *see, e.g.*, *Michigan Tech Fund v. Century Nat'l Bank of Broward*, 680 F.2d 736, 739 (11th Cir. 1982) ("Despite the requisite diversity of parties and amount in controversy, federal courts generally do not have diversity jurisdiction over matters affecting state probate proceedings, other than to establish claims and to determine the rights of those asserting an interest in the estate."). The Estate will present these arguments in its motion to dismiss the Probate Complaint.

The time for the Estate to file a motion to dismiss the Probate Complaint has not yet begun to run.  Although plaintiffs have requested that the Estate waive service, and the Estate has assented to such waiver, plaintiffs have yet to comply with the requirements of Rule 4(d) for obtaining waiver of service.  *See, e.g.*, Fed. R. Civ. P. 4(d)(1) (requiring, *inter alia*, that plaintiffs send by first-class mail or other reliable means two copies of a waiver form).  Nor have they filed a waiver of service.  *See* Fed. R. Civ. P. 4(d)(4) ("When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver.").

## ARGUMENT

The Panel may transfer an action only where: (1) actions in the transferor and transferee court share common issues of contested fact; (2) transfer shall be for the convenience of parties and witness; and (3) transfer will promote the just and efficient conduct of such actions.  28 U.S.C. § 1407(a).  Even if all three predicates are met, however, plaintiffs must meet a "burden of demonstrating that transfer will further the purposes of Section 1407" by showing that "the inherent disadvantages of Section 1407 transfer" do not "outweigh the benefits of transfer for coordinated or consolidated pretrial proceedings."  *In re G. D. Searle & Co. "Copper 7" IUD Products Liability Litigation*, 483 F. Supp. 1343, 1345 (J.P.M.L. 1980).

Plaintiffs cannot make the minimum showing on *any* of the three predicates.  There are no common issues of contested fact between the New Jersey Complaint and the Probate Complaint.  But even if there were a few common issues of fact, the difference in facts presented in the Probate Complaint (*i.e.*, facts concerning whether the disallowance of a probate claim should be overruled in federal court as a matter of D.C. probate law)

9

and those contested in the New Jersey Complaint (*i.e.*, facts concerning whether Mr. Hills intentionally aided Colombian paramilitaries with the intent or knowledge that they would kill or torture Colombian civilians) vastly outweigh any of those common issues. Indeed, the Probate Complaint ought to be dismissed on the basis of facts entirely established by the docket of the Probate Division of D.C. Superior Court. Convenience of the parties clearly weighs in favor of the District of Columbia, given the presence in the District of Columbia of some of the parties and *all* of the attorneys, none of which are located in Florida. And efficient and just conduct of the Probate Complaint militate in favor of allowing the case to proceed to swift and efficient result in the District of Columbia, where judges will apply D.C. probate law, rather than sending the case to an already overburdened MDL Court.

## I.   NO COMMON ISSUES OF CONTESTED FACT LINK THE PROBATE COMPLAINT TO THE MDL.

"The existence of common questions of fact among civil actions pending in different districts is the 'initial criteria' which must be satisfied before any such actions may be transferred under section 1407." *In re Photocopy Paper*, 305 F. Supp. 60, 61 (J.M.P.L. 1969). Although the Probate Complaint and the New Jersey Complaint now pending before the MDL Court are nearly identical, no common issues of fact will be contested or decided in the two actions. In the New Jersey action pending in the MDL Court, the factual issues will—if the case overcomes its procedural hurdles and proceeds to trial—revolve around Mr. Hills' (and other defendants') knowledge of and involvement in certain alleged payments to Colombian paramilitary groups. In the Probate Complaint, however, there are no factual issues to be decided. The Probate Complaint was filed solely "[t]o ensure that any future judgment against Mrs. Hills/the

Decendent [*sic*] would be enforceable against the Decendent's [*sic*] estate." Probate Compl. ¶ 14 n.3.

Whether the filing of the Probate Complaint preserves any rights is an issue requiring no further factual development and may be adjudicated now as a matter of D.C. law. Plaintiffs filed the Probate Complaint in response to the Estate's disallowance of claim. Probate Compl. ¶ 14 n.3. The sole question is whether the Probate Complaint preserves any rights under the D.C. Probate Code. All relevant facts are undisputed: On March 3, 2015, the Estate sent to plaintiffs' counsel a notice to known creditors pursuant to D.C. Probate Code. That notice instructed counsel to serve a verified claim on the Estate and the Probate Division by June 1, 2015, the deadline for presenting a claim under the D.C. Probate Code. Plaintiffs' counsel has represented to the MDL Court that they received this notice. MDL Dkt. No. 813, at 3. Plaintiffs did not present or file a verified claim until July 21, which claim asked that the Estate provide to unnamed persons the amount of $18.5 billion. That claim was disallowed on, *inter alia*, timeliness grounds. Plaintiffs waited until the sixtieth day after the disallowance to file an action challenging that disallowance, and filed that action in federal court, even though they were specifically instructed to file in D.C. Superior Court. The *sole* question to be adjudicated in the Probate Complaint, therefore, is a purely legal one based on accepted facts. There is no need, in deciding whether plaintiffs have preserved their rights following the disallowance of claim, to consider any fact in common with any action pending in the MDL.[5]

---

[5] Plaintiffs may argue that the Estate has raised the legal question of the adequacy of preservation of claims in its motion to dismiss the New Jersey Complaint. But, as noted, there are no disputed questions of fact associated with that issue. "Section 1407 requires

11

Moreover, this Panel has also required that it be "persuaded that … common questions of fact will, in the future course of this litigation, predominate over individual questions of fact present in each action." *In re Eli Lilly & Co. Oraflex Products Liability Litigation*, 578 F. Supp. 422, 423 (J.P.M.L. 1984). To the extent the factual background of both actions—the alleged funding of paramilitary groups in Colombia—is the same, that factual background will not predominate over individual questions of fact in each action. In the Probate Complaint, these allegations are truly background information; what must be litigated is the proper application of the D.C. Probate Code, as outlined above. In the New Jersey Complaint, assuming it reaches trial, the factual background and Mr. Hills' knowledge of those facts (as well as the knowledge of other defendants) and intent to harm plaintiffs will be the central component of the litigation.

## II. CONVENIENCE OF PARTIES AND COUNSEL STRONGLY FAVORS THE DISTRICT OF COLUMBIA.

Convenience of the parties and the witnesses also militates against transfer of the Probate Complaint. "[T]he panel must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law." *In re Antibiotic Drugs*, 299 F. Supp. 1403, 1405 (J.P.M.L. 1969) (quoting I*n*

---

the existence of common questions of fact, not common questions of law." *In re Air Crash Disaster at Huntington, W. Va. on November 14, 1970*, 342 F. Supp. 1400, 1402 (J.P.M.L. 1972). This Panel has repeatedly rejected transfer based on common questions of law, which are neither a necessary nor a sufficient condition for transfer. *In re: Real Estate Transfer Tax Litigation*, 895 F. Supp.2d 1350, 1351 (J.P.M.L. 2012); *In re Prop. Assessed Clean Energy (PACE) Programs Litig.*, 764 F. Supp. 2d 1345, 1346–47 (J.P.M.L. 2011) (denying centralization where common factual issues were "largely undisputed and primarily common legal questions [were] left to be decided"). Even where there are common factual questions, if those factual questions may be resolved by a single, common legal issue, this Panel has held transfer inappropriate. *In re American Home Products Corp "Released Value" Claims Litigation*, 448 F. Supp. 276, 278 (J.P.M.L. 1978).

*re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L.1968)).  In the present action the plaintiffs are anonymous and domiciled in Colombia.  Their domicile is thus neutral regarding a choice between Florida and the District of Columbia.  All other factors favor the District of Columbia.  Ms. Hills, as the representative of the Estate, is domiciled in the District of Columbia.  The Estate, a creature of D.C. law, was created pursuant to procedures of and filings made in the D.C. Superior Court.  The Estate's probate counsel, Ellen Harrison of McDermott Will & Emery, practices in the District of Columbia.  The Estate's chief litigation counsel, K. Lee Blalack II of O'Melveny & Myers LLP, also practices in the District of Columbia.  Earthrights International, which represents plaintiffs, has an office in the District of Columbia and counsel Marco Simons, who filed the Probate Complaint, practices in the District of Columbia.  Mr. Simons and Ms. Harrison, along with Ms. Hills, are the only conceivable relevant witnesses to the filing of documents relevant to the probate estate, the only factual issues relevant to the Probate Complaint.

"Although merely some enhancement of the convenience of the parties and witnesses is sufficient to meet the requirement of the Statute, the Panel has generally required that transfer offer some meaningful reduction in overall inconvenience before it will order transfer."  David F. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation* § 5:5, at p. 113 (2015).  Here, there is no reason to transfer the Probate Complaint based on convenience of the action proceeding in Florida, whereas proceeding in the District of Columbia would be convenient for all parties and counsel.

**III.   THE JUST AND EFFICIENT CONDUCT OF THE ACTION CAN BE BEST ACHIEVED BY VACATING THE TRANSFER ORDER AND PERMITTING THE PROBATE COMPLAINT TO BE RESOLVED IN THE DISTRICT OF COLUMBIA.**

Plaintiffs also bear the burden of showing that transfer will promote the just and efficient conduct of the litigation.  When evaluating this factor, the Panel has often considered "the prevention of duplicative discovery," and the "prevent[ion] of inconsistent rulings."  *In re Griseofulvin Antitrust Litigation*, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975).

In the instant action, however, denial of transfer cannot possibly result in "duplicative discovery and inconsistent pretrial rulings."  *In re Amerada Hess Corp. Antitrust Litigation*, 395 F. Supp. 1404, 1405 (J.P.M.L. 1975).  Whereas the New Jersey action before the MDL Court may address the substantive issues underlying the litigation, the Probate action will only address whether plaintiffs have preserved their rights under the D.C. Probate Code.  This limited legal question should require no discovery, because there are no relevant facts in dispute.  To the extent it does result in discovery, such discovery would be limited and focused on D.C. probate issues, not the historical facts relevant to the tort claims asserted in the New Jersey Complaint pending in the MDL Court.  It is also unlikely that denial of transfer will result in inconsistent rulings.

Indeed, the Probate Complaint will likely be dismissed on the basis of D.C. law upon the Estate's filing of a motion to dismiss.  This Panel has acknowledged that where such a "motion involves an issue of [state] law unique to [one defendant] and … the motion is potentially dispositive of the entire action … the motion to vacate should be granted."  *In re: Accutane Products Liability Litigation*, 560 F. Supp.2d 1370, 1371 (J.P.M.L. 2008).  Regardless of the outcome in any federal action, the Probate Division of

the D.C. Superior Court will have the final say on whether plaintiffs have preserved their rights, in the context of an enforcement proceeding following an MDL judgment. Permitting a court in the District of Columbia to swiftly decide whether plaintiffs have adequately preserved their rights under D.C. law would likely prevent inconsistent rulings later in the proceedings.

The Panel has also considered whether transfer would avoid conflicting class actions, *In re Piper Aircraft Distribution System Antitrust Litigation*, 405 F. Supp. 1402, 1403 (J.P.M.L. 1975), or would avoid conflicting and duplicative pretrial conferences, *In re Antibiotic Drugs Antitrust Litigation*, 355 F. Supp. 1400, 1401 (J.P.M.L. 1973). Here, the New Jersey plaintiffs are the only ones asserting a class action against the Estate—the D.C. action plaintiffs have never asserted a class action—and so there is no risk of inconsistent class actions. Moreover, there is no chance of conflicting pretrial conferences where the issues to be decided in the two actions are so disparate.

The Panel has considered whether transfer would reduce a burden on parties by allowing division of workload among many attorneys. *See, e.g.*, *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation*, 424 F. Supp. 504, 506-07 (J.P.M.L. 1976). But the Estate is unique among the defendants, because it is the only party litigating questions of D.C. probate law, so a transfer here cannot possibly reduce attorney workload.

Finally, the Panel has considered whether the transfer would encourage judicial economy. This may include consideration of docket conditions in the transferee court, familiarity of the transferee judge with the relevant issues, and the size of the litigation. David F. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on*

*Multidistrict Litigation* § 5:16, at p. 148 (2015); *see also In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1230 (9th Cir. 2006). The docket of the MDL Court is already substantially burdened. That Court is managing both ATA and ATS actions, with multiple motions pending in various stages of briefing. More than seven years after this Panel first established the MDL, none of the ATS actions have proceeded past the motion-to-dismiss stage. There is no cause to believe the transferee judge in the Southern District of Florida has particular familiarity with issues of D.C. probate law; it is far more likely that a judge in the District of Columbia will have such familiarity.

Resolution of the Probate Complaint is, in some sense, tangential to the larger MDL proceeding pending before Judge Marra. Nonetheless, swift resolution of that complaint is necessary to effectuate the purposes of D.C. Code § 20-908, which is designed to provide swift repose to probate estates. *See Eastern Indemnity*, 543 A.2d at 1365 (holding that "section 20-908 is stricter than any statute of limitations"). The Panel has denied transfer "when certain actions in the litigation were proceeding expeditiously toward trial." *In re Disposable Diaper Patent Validity Litigation*, 362 F. Supp. 567, 568 (J.P.M.L. 1973). Given the many complex issues pending before the MDL Court, there is a far greater chance that the Probate Complaint can be resolved more expeditiously in the District of Columbia and the Estate can attain the peace offered by Section 20-908.

///

///

///

///

## **CONCLUSION**

For the reasons set forth above, the conditional transfer order (CTO-7) should be vacated and the action remanded to the U.S. District Court for the District of Columbia for further proceedings.

Respectfully submitted,

Dated: October 29, 2015  
Washington, D.C.

/s/ K. Lee Blalack, II  
K. LEE BLALACK, II  
D.C. Bar No. 452372  
lblalack@omm.com  
ANTON METLITSKY  
N.Y. Bar No. 4383527  
ametlitsky@omm.com  
DIMITRI D. PORTNOI  
CAL. BAR NO. 282871  
dportnoi@omm.com  
O'MELVENY &MYERS LLP  
1625 Eye Street NW  
Washington, DC 20006  
(202) 383-5300  
(202) 383-5414 (fax)

*Attorneys for Carla A. Hills, as the Personal Representative of the Estate of Roderick M. Hills, Sr.*