# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**IN RE:** Chiquita Brands International, Inc.
Alien Tort Statute and Shareholder Derivative
Litigation

MDL No. 1916

This Filing Relates To The Following Case Only:
*John Doe 1 et al. v. Carla A. Hills, as Personal Representative for the Estate of Roderick M. Hills*, D.D.C., 1:15-cv-1586 (JDB)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSTION TO DEFENDANT'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-7)

Dated: November 19, 2015

Respectfully submitted,

/s/ MARCO SIMONS

Marco Simons
**EarthRights International**
1612 K Street NW #401
Washington, DC 20006
Tel: 202-466-5188
Fax: 202-466-5189
Email: marco@earthrights.org

*Counsel for Plaintiffs John Doe 1 et al.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................................1

BACKGROUND ..................................................................................................................................2

ARGUMENT........................................................................................................................................4

    A.   Plaintiffs' claims against Defendant are identical to the claims

    currently being litigated in the MDL ...................................................................................4

    B.   Failure to transfer will result in duplicative litigation

    and potentially inconsistent rulings .....................................................................................6

    C.   Judicial economy weighs in favor of transfer.....................................................................8

    D.   Convenience of parties does not favor litigating in D.C. ...................................................10

CONCLUSION....................................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**U.S. CASES**

In *In re Air Crash Disaster at Huntington, West Virginia on November 14, 1970,*

342 F. Supp. 1400, 1402 (J.P.M.L. 1972) .................................................................... 6 n. 5

*In re American Home Products Corp "Released Value" Claims Litigation,*

448 F. Supp. 276, 278 (J.P.M.L. 1978) ....................................................................... 6 n.5

*In re Amtrak Train Derailment at Frankewing, Tennessee, on Oct. 1, 1975,*

431 F. Supp. 916, 918 (J.P.M.L. 1977) ........................................................................ 6-7

*See In re First National Bank, Heavener, Oklahoma (First Mortgage Revenue Bonds) Securities Litigation,*

451 F. Supp. 995, 997 (J.P.M.L. 1978) .......................................................................... 7

*In re GM LLC Ignition Switch Litigation,*

MDL No. 2543, 2014 U.S. Dist. LEXIS 159007, (J.P.M.L. Oct. 15, 2014) ...................... 9-10

*See In re Griseofulvin Antitrust Litigation,*

395 F. Supp. 1402, 1403 (J.P.M.L. 1975) ....................................................................... 7

*In re H & R Block Mortgage Corp. Prescreening Litigation,*

435 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006) ................................................................. 10

*In re Pittsburgh & L. E. R. Co. Sec. & Antitrust Litigation,*

374 F. Supp. 1404, 1405 (J.P.M.L. 1974) ....................................................................... 7

*In re Plumbing Fixture Cases,*

298 F. Supp. 484, 492 (J.P.M.L. 1968) ........................................................................... 8

*In re Property Assessed Clean Energy (PACE) Programs Litigation,*

764 F. Supp. 2d 1345, 1346–47 (J.P.M.L. 2011) .......................................................... 6 n.5

*In re Real Estate Transfer Tax Litigation,* 895 F. Supp.2d 1350, 1351 (J.P.M.L. 2012) ........................ 6 n.5

*In re Sugar Industry Antitrust Litigation (East Coast),*

471 F. Supp. 1089, 1093 (J.P.M.L. 1979) ....................................................................... 9

*In re: TLI Communications LLC Patent Litigation,*

26 F. Supp. 3d 1396, 1397 (J.P.M.L. 2014) ........................................................................ 8-9

*In re Train Derailment Near Tyrone, Oklahoma, On Apr. 21, 2005,*

545 F. Supp. 2d 1373, 1374 (J.P.M.L. 2008) ........................................................................10

## STATUES AND RULES

D.C. Code § 20-903 ....................................................................................................................3

D.C. Code § 20-908 ....................................................................................................................3

D.C. Superior Court Rules of the Probate Division (D.C. SCR-PD), Rule 411 ....................3

## OTHER AUTHORITIES

MULTIDISTRICT LITIGATION MANUAL (2015)................................................................7, 8

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendant's argument is that two identical complaints, raising the same claims, by the same Plaintiffs, against the same Defendant, should not be heard in a single, already-existing MDL proceeding, to which three other lawsuits originating in the same district have already been transferred. There is no reason for such duplicative litigation. Plaintiffs' District of Columbia Complaint should be transferred so that it can be heard together with Plaintiffs' New Jersey Complaint and other D.C. complaints against Chiquita.

Chiquita Brands International has pled guilty to the federal crime of supporting a terrorist group designated as such by the United States Government. Chiquita illegally funded the AUC, paramilitaries known for slaughtering civilians, in areas of Colombia from which Chiquita exported bananas. Both the New Jersey and D.C. Complaints are brought on behalf of the same Plaintiffs whose decedents were murdered by the AUC. Both Complaints allege that Roderick Hills, as a Director and President of the Audit Committee of Chiquita's Board, approved payments to the AUC and a system for disguising those payments. Both Complaints allege that Mr. Hills was liable under the Torture Victim Protection Act and Colombian ort law. And, since Mr. Hills has passed away, both Complaints now assert these claims against Defendant Carla Hills, his Estate's Personal Representative.

Defendant argues that the D.C. action is only about probate issues, but it includes all of the same liability claims as the New Jersey Complaint that is already before the MDL. Defendant is equally wrong in claiming that the probate issues are absent from the proceeding before the MDL. Defendant has moved to dismiss the New Jersey Complaint in the MDL based in part on the exact probate arguments that she now claims she will raise in the District of Columbia. Briefing on those issues is nearly complete.

Thus, the same merits issues and the same probate issues are raised in both actions.  There is

1

no reason to litigate them in two fora. Indeed, having two judges decide the same issues undermines judicial economy, runs counter to the convenience of the parties and parties' counsel, and risks inconsistent decisions – all contrary to the purpose of the MDL statute. Defendant's motion to vacate the Conditional Transfer Order should be denied.

## BACKGROUND

Plaintiffs are plaintiffs in *Doe v. Chiquita Brands International, Inc.*, No. 07-CV-3406 (D.N.J.) (as originally filed), No. 08-80421 (S.D. Fla.) (in the MDL), known as the "New Jersey" case against Chiquita. The New Jersey case is one of several actions this Panel transferred to the Southern District of Florida for coordinated or consolidated pre-trial proceedings. *See In re Chiquita Brands Int'l, Inc., Alien Tort Statute & Shareholder Derivative Litigation*, 536 F. Supp. 2d 1371 (J.P.M.L. 2008) ("the MDL"). The MDL includes at least six cases against Chiquita filed in the District of Columbia. *See id.* at 1371 & n.1; CTO-3 in MDL No. 1916; CTO-5 in MDL No. 1916.

On October 29, 2014, Roderick Hills, a named individual defendant in the New Jersey action, died in the District of Columbia. Def.'s Motion to Vacate Transfer Order, Doc. 10-1 at 1. On March 3, 2015, Hills's counsel filed a Suggestion of Death in the MDL informing the parties of Hills's death. *Id.* at 6. A few days later, Plaintiffs received a Notice of Appointment of Carla Hills as a Personal Representative of the Estate of Roderick Hills ("the Estate"), which had been filed with the Probate Division of the D.C. Superior Court almost four months earlier, on November 20, 2014. Declaration of Marco Simons ("Simons Decl.") ¶ 2. On June 1, 2015, Plaintiffs timely filed a Motion for Substitution in the MDL, naming Carla Hills as a defendant in her capacity as Personal Representative of the estate of Roderick Hills. Doc. 10-1 at 6, MDL Dkt. No. 813. The MDL court granted that motion. Doc. 10-1 at 6, MDL Dkt. No. 834.

On July 21, 2015, Plaintiffs submitted a creditor's claim to the Probate Division of the D.C. Superior Court. Plaintiffs did this out of an abundance of caution; they maintain that this step was

not necessary, because Defendant had been served with the New Jersey Complaint prior to his death, *see* D.C. Code § 20-903(c), and because Defendant already had actual knowledge of Plaintiffs' claims against Mr. Hills in the MDL action. Simons Decl. Ex. 2 at 7-9. On July 31, the New Jersey Plaintiffs received notice of Carla Hills's disallowance of the claim, which offered no basis for the disallowance. Simons Decl. ¶ 3.

On September 29, within two months of disallowance, pursuant to D.C. Code § 20-908(a), the New Jersey Plaintiffs filed a complaint ("D.D.C. Complaint) in U.S. District Court for the District of Columbia ("D.D.C."). The Probate Division Rules clarify that Plaintiffs' decision to file in D.D.C. was proper; the language prescribed for the notice of disallowance reads as follows: "If your claim has been disallowed in whole or in part, it will be barred to the extent of its disallowance unless you file a verified complaint with the appropriate Division of this Court *or other court of competent jurisdiction* within 60 days . . . ." D.C. Superior Court Probate Rule 411 (emphasis added). This makes perfect sense, because D.C. probate law cannot affect a litigant's substantive rights to litigate federal question or diversity claims in federal court. On October 7, 2015, Defendant filed a motion to dismiss ("MTD") the New Jersey case in the MDL, arguing in part that the Plaintiffs' claims are prudentially moot because their actions to preserve claims against the Estate are procedurally infirm.

In light of the fact that Plaintiffs' D.D.C. Complaint is virtually identical to the complaint in the New Jersey action, on October 6, Plaintiffs filed with this Panel a Notice of Potential Tag-Along Action so that the D.D.C. action may be transferred to the MDL court for consolidation. On October 29, Defendant filed a motion to vacate the Panel's Conditional Transfer Order, CTO-7. Moreover, the issue of whether claims against the Estate have been preserved will have been presented to the probate court, in the form of Plaintiffs' motion to restrain distribution. An MDL transfer order is certainly not the place to litigate the merits of Hills's MTD.

**ARGUMENT**

**A. Plaintiffs' claims against Defendant are identical to the claims currently being litigated in the MDL.**

The New Jersey action is, in relevant part, a suit against the Defendant for Mr. Hills's funding of the terrorists who murdered their relatives. The same Plaintiffs have also brought the exact same claims against Defendant in the District of Columbia. Plaintiffs filed the D.D.C. Complaint out of an abundance of caution, to foreclose any argument that Plaintiffs have failed to take proper steps to ensure that any judgment finding Decedent Roderick Hills liable will be enforceable against the Estate. In opposition to Defendant's MTD, Plaintiffs have shown that Defendant, as Personal Representative of Roderick Hills's Estate, was already on sufficient notice of Plaintiffs' claim on the Decedent's assets because of her actual knowledge of the MDL action. Simons Decl. Ex. 2 at 7-8.

Defendant concedes that "the [D.D.C.] Complaint and the New Jersey Complaint now pending before the MDL Court are nearly identical," but nonetheless asserts that "no common issues of fact will be contested or decided in the two actions." Doc. 10-1 at 10. That is a remarkable assertion. According to Defendant, Plaintiffs' D.D.C. action "will only address whether plaintiffs have preserved their rights under the D.C. Probate Code," whereas the MDL action is limited to the substantive questions regarding whether Mr. Hills, and now the Personal Representative, can be held liable. *Id.* at 14. Defendant is doubly wrong. Both the probate issues and the liability issues are present in both cases.

First, while it is true that Plaintiffs filed their D.D.C. Complaint to make certain that they fulfilled D.C. Code requirements following Defendant's disallowance of their creditor's claim, the D.D.C. Complaint certainly does not raise only the single "limited legal question" of whether Plaintiffs have adequately preserved their rights to the Estate's assets under the D.C. Probate Code. Defendant conflates the *reason* Plaintiffs filed their complaint in D.D.C. with the *scope* of the action.

4

The latter is no different than that of Plaintiffs' N.J. Complaint: it includes all of the substantive claims already being litigated in the MDL: complicity in summary execution, battery, wrongful death, etc. And because these underlying claims—based in federal and Colombian law—are identical in the N.J. and D.D.C. Complaints, the same factual issues that must be litigated in the MDL, *i.e.* those revolving around "Mr. Hills' (and other defendants') knowledge of and involvement in certain alleged payments to Colombian paramilitary groups," Doc. 10-1 at 10, are squarely raised in the D.D.C. action.

While Defendant argues that the only question at issue in the D.D.C. Complaint is whether Plaintiffs' filing of the Probate Complaint in response to Defendant's disallowance of their creditors' claim preserves their rights against the Estate, Doc. 10-1 at 11, the suggestion that it does not is at best a defense to the Complaint. In any event, that question encompasses numerous others. The disallowance itself which prompted the filing was indisputably improper if Plaintiffs have a valid claim against Defendant – i.e., if Mr. Hills was liable for his complicity in causing Plaintiffs' injuries at the hands of Colombian death squads. Thus the entire N.J. case is encompassed within this seemingly simple question. If the D.D.C. Complaint were to continue in D.C., the court would first have to decide the issue of Mr. Hills's liability for the underlying tort claims – exactly the same question before the MDL court.

Second, even if Defendant had been correct that the only issue in the D.D.C. action is whether Plaintiffs have preserved their rights under the D.C. Probate Code, that still supports transfer, because that same issue is *already* being litigated in the MDL. Defendant has laid out the arguments she intends to make in her motion to dismiss the D.D.C. Complaint, including the primary argument that Plaintiffs should have filed their verified complaint with the Probate Division rather than D.D.C. and that any claims against the Estate are now time-barred. Doc. 10-1 at 2. But Defendant has already made that same argument in the MDL. Simons Decl. Ex. 1 at 9-10. Indeed, a

significant portion of Defendant's motion to dismiss in the MDL is dedicated to highlighting alleged deficiencies in Plaintiffs' handling of probate matters, which Defendants will undoubtedly raise again in D.D.C. to argue that Plaintiffs did not properly apply the D.C. Probate Code.[1]

In short, the liability issues that Defendant argues are confined to the N.J. action being litigated in the MDL are also present in the D.D.C. action, and the probate issues that Defendant claims are only in the D.D.C. action are also in – and indeed have been raised by Defendant herself in – the MDL.

**B. Failure to transfer will result in duplicative litigation and potentially inconsistent rulings.**

Allowing two different courts to adjudicate common issues would clearly undermine the purpose of Section 1407 transfers, which is to prevent duplicative litigation and inconsistent pretrial

---

[1] According to Defendant, it is irrelevant that she has already raised the exact same argument in the MDL, because the probate question does not involve disputed fact issues and common questions of law are insufficient. Doc. 10-1 at 11-12, n.5. That argument hinges on Defendant's false claim that the D.D.C. action does not involve the underlying merits of Mr. Hills's liability. Defendant apparently disputes many of the facts relevant to Plaintiffs claims, for example, whether Hills knew when he approved funding to the AUC, a designated terrorist organization, that they were murdering civilians. Simons Decl. Ex. 2 at 15.

Even if the analysis is limited to the probate issues, Defendant has not represented that she will not challenge the fact that she had actual notice of the claims. And even if the facts are undisputed, it would make little sense to deny transfer where the two courts would be required to apply the same law to the same facts, in a dispute between the same parties. Defendant's cases do not support the claim that undisputed common facts are inherently insufficient for transfer. In *In re Air Crash Disaster at Huntington, W. Va. on November 14, 1970,* 342 F. Supp. 1400, 1402 (J.P.M.L. 1972), the court *required* transfer, noting "the common factual background concerning the events surrounding the crash." The case for transfer is even stronger here, where there are both common questions of law and a "common factual background." In *In re Real Estate Transfer Tax Litigation,* 895 F. Supp.2d 1350, 1351 (J.P.M.L. 2012), the court also relied on the fact that the various cases had different procedural postures, which is not true. In *In re Prop. Assessed Clean Energy (PACE) Programs Litig.,* 764 F. Supp. 2d 1345, 1346–47 (J.P.M.L. 2011), the court noted not only that the common facts were undisputed, but also that the various actions would require an inquiry into individualized facts. Here, there are no facts specific to one action but not the other. And in *In re American Home Products Corp "Released Value" Claims Litigation,* 448 F. Supp. 276, 278 (J.P.M.L. 1978), the various cases involved different defendants, and the court refused to transfer because the cases "share[d] few, if any, questions of fact." The case provides no basis to decline to consolidate cases with identical facts.

rulings. *See In re Amtrak Train Derailment at Frankewing, Tenn., on Oct. 1, 1975,* 431 F. Supp. 916, 918 (J.P.M.L. 1977); *In re Griseofulvin Antitrust Litig.*, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975); *In re Pittsburgh & L. E. R. Co. Sec. & Antitrust Litig.*, 374 F. Supp. 1404, 1405 (J.P.M.L. 1974). It is no answer for Defendant to blithely (and erroneously) assume, as she does, that she will win her argument that the D.D.C. Complaint is procedurally defective. Doc. 10-1 at 10. Even assuming Defendant is correct that the probate issue can be easily disposed in her favor, that would make no difference with respect to transfer. Again, Defendant has raised the same arguments in the MDL as she suggests will lead to dismissal of the D.D.C. action. If the issue is as easy as Defendant claims, then Judge Marra in the MDL will agree with Defendant and dismiss Plaintiffs' N.J. action as to the Estate, and do the same with the D.D.C. case once it is comes before him. There would be no need for two judges to consider the same issue, raising the possibility of inconsistent decisions on literally the same claims.

Regardless, Defendant's probate argument is wrong. As Plaintiffs have already shown in the MDL, Plaintiffs did not need to file the D.D.C. action to preserve their claim, and even if they did, that action is surely adequate to do so. Simons Decl. Ex. 2 at 8-9. The Panel's role is not to consider the merits, MULTIDISTRICT LITIGATION MANUAL § 5:50 (2015), and Plaintiffs do not ask the Panel to do so here. Rather, the Panel should simply ignore Defendant's mistaken assumption that her probate defense will necessarily succeed. And if the Panel assumes, as it must, that Plaintiffs may prevail on the merits, the flaws in Defendant's argument are obvious.

If transfer is denied, all of the probate issues raised in the N.J. action and currently before the MDL court will also be litigated in the District of Columbia. And Defendant has not suggested she will not challenge the merits of the underlying claims in a motion to dismiss the D.D.C action. Thus, all of the liability questions currently being litigated in the MDL court will also be litigated in the D.D.C. action. If transfer is denied, both the D.D.C. and the MDL would have to adjudicate the

same arguments.

That, of course, raises all sorts of risks of inconsistent judgments. Even if Defendant won her probate argument or her merits argument or both in one forum, Plaintiffs would still have another action. For example, if Defendant were to prevail in dismissing the D.D.C. action, Judge Marra could still deny the pending MTD and allow the N.J. action to proceed. The MDL procedure is supposed to prevent exactly this possibility of different federal judges coming to conflicting judgments on the same legal question in the same factual scenario. MULTIDISTRICT LITIGATION MANUAL Appendix E (2015); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 492 (J.P.M.L. 1968).

Of course, the existence of two separate but identical actions in two fora also presents the possibility – indeed, in Plaintiffs' view, the most likely possibility – that both actions will survive the duplicative motions to dismiss. In that case, the same claims brought by the same Plaintiffs against the same Defendant will be litigated in two federal courts. Again, MDL is expressly meant to prevent that. *See In re First Nat. Bank, Heavener, Okl. (First Mortgage Revenue Bonds) Securities Litigation*, 451 F. Supp. 995, 997 (J.P.M.L. 1978) ("Transfer under Section 1407 is thus necessary, even though only two actions are involved, in order to prevent duplicative pretrial proceedings and eliminate the possibility of inconsistent pretrial rulings."). This action therefore must be transferred to avoid duplicative litigation or inconsistent judgments.[2]

**C.  Judicial economy weighs in favor of transfer.**

Centralization "offers substantial savings in terms of judicial economy" by allowing a single judge to become highly acquainted with complex factual histories and legal theories in a consistent fashion, as opposed to generating multiple, possibly conflicting decisions from different judges. *See*

---

[2] Defendant's contention that "there is no risk of inconsistent class actions" because "D.C. action plaintiffs have never asserted a class action" is plainly wrong. The D.D.C. Complaint, which, again, is virtually identical to the N.J. Complaint, contains the same class action allegations raised in the former. *See* D.D.C. Complaint, Case MDL No. 1916, Doc. 59-3 (filed with the JPML on Oct. 6, 2015) at 49-53. Defendant's position is therefore confusing and unfounded.

*In re: TLI Communications LLC Patent Litig.,* 26 F. Supp. 3d 1396, 1397 (J.P.M.L. 2014). Therefore, contrary to Defendant's position, transferring the D.D.C. action would not substantially burden the MDL court because Defendant *has already raised these same issues of D.C. probate law before Judge Marra.* And the idea that that this action should be kept in D.D.C. because "it is far more likely that a judge in the District of Columbia will have [] familiarity" with such issues is unavailing. Doc. 10-1 at 16. First, Defendant's position that questions of D.C. probate should remain in a D.C. court is unpersuasive considering it has extensively briefed these questions in the MDL. Defendant offers no compelling reason why the MDL court would be any less qualified than a D.D.C. judge to rule on issues that have already been raised before it. Indeed, Defendant insists that the threshold issue in the D.D.C. action, whether the D.D.C. Complaint preserves Plaintiffs' rights in probate against the Estate, is straightforward enough that it can be resolved "swift[ly] and efficient[ly]." *Id.* at 10. If Defendant's position is indeed so meritorious on its face, there is no reason why the MDL court – which has been fully briefed on the factual context of the issue – would be any less capable of adjudicating the matter than a court entirely unfamiliar with the procedural posture.

MDL courts handle complex issues of state law all the time. If federal judges presumed familiarity with their forum state's law were a significant factor in considering MDL transfer, few transfers would ever occur. For example, in response to an argument that "the judge before whom the Mississippi action presently is pending is presumably more familiar than [the MDL judge] with the Mississippi state law claims, and those claims could be more easily and quickly resolved in the Northern District of Mississippi," the Panel responded simply: "These arguments are not convincing." *See, e.g., In re Sugar Industry Antitrust Litigation (East Coast)*, 471 F. Supp. 1089, 1093 (J.P.M.L. 1979). Federal judges regularly consider legal issues arising in many states. *See also, e.g., In re GM LLC Ignition Switch Litig.*, MDL No. 2543, 2014 U.S. Dist. LEXIS 159007, *3 (J.P.M.L. Oct. 15, 2014) (stating that argument that a tag-along case is "unique" because it "brings Wisconsin state law

claims [is] not persuasive," because "many MDL No. 2543 actions bring state law claims, including under Wisconsin law").

Second, because Plaintiffs' D.D.C. complaint involves not only probate matters but substantive issues of federal and Colombian tort law already being litigated in the MDL, it would be prudent to consolidate these issues before Judge Marra, who has "already developed familiarity with the issues involved" as a result of presiding over pre-trial proceedings for nearly eight years. *See In re Train Derailment Near Tyrone, Okl.,* On Apr. 21, 2005, 545 F. Supp. 2d 1373, 1374 (J.P.M.L. 2008). Conversely, having two different courts decide the same substantive issues would run counter to judicial economy and the purpose of a transfer, as it not only would waste judicial resources but could result in inconsistent and/or conflicting judgments, as articulated above. *See In re H & R Block Mortgage Corp. Prescreening Litig.,* 435 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006).

### D. Convenience of parties does not favor litigating in D.C.

Defendant argues that because she, her counsel, and some of Plaintiffs' counsel are located in the District of Columbia, "convenience of the parties and the witnesses also militates against transfer." Doc. 10-1 at 12. This argument is unavailing. Defendants maintain that "no discovery" will be warranted in the D.D.C. action "because there are no relevant facts in dispute." *Id.* at 14. That ignores the merits issue, which will require substantial discovery that overlaps with the discovery in the actions against Defendant, the other individual Defendants and Chiquita in the MDL. And if, as Defendant claims, no discovery is needed on the probate issues, it follows that there will be no need for Plaintiffs' counsel to depose D.C.-based witnesses or engage in any other local fact-finding that would militate against transfer on "convenience" grounds.

Indeed, Chiquita – whose primary counsel is also based in D.C. – made a nearly identical argument in the original MDL proceedings, initially moving for centralization in D.C. *See* 536 F. Supp. 2d at 1371. The Panel rejected that argument, finding that "centralization under Section 1407

10

in the Southern District of Florida will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation," in part because "the district is closer to Colombia, where many of the events that bear on this litigation took place." *Id.* at 1372.

This argument is even less convincing now that both Plaintiffs' counsel and Defendant's counsel are *already* litigating identical issues in the MDL court, including the probate matters. If anything, it is more of an inconvenience to require the Parties to draft virtually identical briefs and engage in parallel proceedings for an indeterminate amount of time in two separate venues.

Defendant also cites attorney workload as a factor – somewhat ironically, given how much work has been created by their objection to what should be an extremely straightforward transfer of a tag-along action. Nonetheless, there are a number of individual defendants in the MDL along with Chiquita itself, and they have already coordinated on joint filings including a now-pending joint motion to dismiss. Indeed, Defendant's motion to dismiss in the MDL expressly joins this joint motion, taking advantage of the work performed by other defense counsel. Simons Decl. Ex. 1 at 2. That is precisely the sort of efficiency the MDL procedure is designed to foster, and precisely the sort that would be lost if the same issues are litigated in two separate district courts.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Vacate Conditional Transfer Order (CTO-7) should be denied and this action should be transferred to the already existing MDL.

Dated: November 19, 2015
Washington, D.C.

Respectfully submitted,

 /s/ MARCO SIMONS

Marco Simons
**EarthRights International**
1612 K Street NW #401
Washington, DC 20006
Tel: 202-466-5188

11

Fax: 202-466-5189
Email: marco@earthrights.org
**Counsel for Plaintiffs John Doe 1 *et al.***